UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| WALTER EZEQUIEL RAMIREZ ESTURBAN,<br>    Petitioner,<br><br>v.<br><br>MICHAEL NESSINGER, *Warden of Wyatt Detention Facility*; DAVID T. WESLING, *Field Office Director of Enforcement and Removal Operations, Boston Field Office, Immigration and Customs Enforcement*; MICHAEL KROL, *HSI New England Special Agent in Charge*; DAVID VENTURELLA,[1] *Acting Director, U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; TODD BLANCHE, *Acting U.S. Attorney General*, and DONALD J. TRUMP, *President of the United States*,<br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26-cv-320-JJM-AEM |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Walter Ezequiel Ramirez Esturban, who is currently being held in the custody

of Immigration and Customs Enforcement ("ICE"), brings this habeas petition under

28 U.S.C. § 2241.  ECF No. 1.  Mr. Ramirez asserts that the immigration judge ("IJ")

---

[1] Pursuant to Fed. R. Civ. P. 25(d), David Venturella has been substituted for Todd Lyons as the Acting Director of ICE.

who denied his request for release on bond constitutionally erred in finding him to pose a danger to the community. *Id.* at 8-12. The Government opposes Mr. Ramirez's petition and argues, among other things, that the IJ's bond determination was constitutionally sufficient. ECF No. 4 at 5.

For the reasons stated below, the Court agrees with the Government. As such, the Court DENIES Mr. Ramirez's petition.

## I.   BACKGROUND

Mr. Ramirez is a twenty-year-old native of Guatemala. ECF No. 1 at 1. He has lived in the United States since he was six years old, arriving with his mother in 2012 while on a tourist visa. *Id.* at 4. Mr. Ramirez has resided in Massachusetts ever since. *Id.* He has been granted Special Immigrant Juvenile ("SIJ") status[2] by U.S. Citizenship and Immigration Services ("USCIS"), as well as employment authorization (i.e., a "work permit"). *Id.*; *see also* ECF No. 5-1 at 2.

Since 2024, Mr. Ramirez has had three encounters with law enforcement. First, on March 7, 2024, Mr. Ramirez was arrested in Chelsea, Massachusetts for one count of assault and battery on a household member, two counts of malicious destruction of property, and one count of assault and battery on a child resulting in an injury. *See* ECF No. 5-2 at 21. At the time, Chelsea police officers spoke with a

---

[2] SIJ status is a "'protective classification designed by Congress to safeguard abused, abandoned, or neglected alien children who are able to meet its rigorous eligibility requirements.'" *Cosme v. Garland*, 619 F. Supp. 3d 264, 266 (D.R.I. 2022) (quoting *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 158 (3d Cir. 2018)); *see* 8 U.S.C. §§ 1101(a)(27)(J), 1154(a)(1)(G). Those with SIJ status are eligible to seek adjustment of status to that of a lawful permanent resident, which is often referred to as a "green card." *See Cosme*, 619 F. Supp. 3d at 266.

young woman who identified herself as Mr. Ramirez's ex-girlfriend and stated that Mr. Ramirez had "slapped her 2-3 times with an open hand across [the] fac[e]." *Id.* at 23. The officers observed "bruising in her cheek area on the left side of her face" and noted that Mr. Ramirez "also broke the glasses that [she] wears." *Id.* The officers also spoke with the ex-girlfriend's ten-year-old brother, who stated that Mr. Ramirez had also struck him "with an open hand across the face." *Id.* The officers also observed "bruising on the left side of [the brother's] face." *Id.* These charges were later dismissed by the Chelsea District Court for failure to prosecute. *See* ECF No. 8-1 at 22.

Second, on April 16, 2024, police officers in Chelsea charged Mr. Ramirez with one count of discharging a firearm within 500 feet of a building, two counts of assault with a dangerous weapon, one count of assault and battery with a dangerous weapon, two counts of carrying a firearm without a license, one count of unlawful possession of ammunition, and one count of violating an abuse prevention order. *See* ECF No. 5-2 at 32. These charges were also later dismissed by the Chelsea District Court for failure to prosecute. *See* ECF No. 8-1 at 27-46.

Finally, on February 9, 2026, Chelsea police officers arrested Mr. Ramirez in his home and charged him with assault and battery on a pregnant victim. *See* ECF No. 5-2 at 13. The officers spoke with a woman who identified herself as Mr. Ramirez's fiancée and said that she was seven months pregnant with his child. *Id.* at 20. She told the officers that Mr. Ramirez had come home intoxicated and was acting aggressively and that, when she tried to calm him down, Mr. Ramirez punched

3

her finger and pushed her with both of his hands on her shoulders. *Id.* This charge has also since been dismissed by the Chelsea District Court for failure to prosecute. *See* ECF No. 8-1 at 48.

Nevertheless, after a court hearing on February 10, 2026, ICE officers took Mr. Ramirez into custody and charged him with being removable under 8 U.S.C. § 1227(a)(1)(B).[3] ECF No. 5-1 at 2. He was later placed in immigration detention at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1 at 1, 5.

While in detention, Mr. Ramirez appeared before an IJ for a master calendar hearing in his removal case. *See* Master Calendar Hearing, Chelmsford Immigr. Ct. (recorded Mar. 10, 2026).[4] At the hearing, Mr. Ramirez requested a bond hearing, which the IJ granted. *Id.* at 00:44-00:52. The IJ also informed Mr. Ramirez of his right to counsel at his next removal proceeding and notified him that if he failed to submit an application for immigration relief prior to his next proceeding, she would order him removed from the United States. *Id.* at 01:12-01:48.

Two weeks later, Mr. Ramirez appeared with counsel for his next removal proceeding. *See* Removal Hearing, Chelmsford Immigr. Ct. (recorded Mar. 24, 2026).[5]

---

[3] This provision of the Immigration and Nationality Act ("INA") renders a noncitizen removable if they overstay their visa. *See Rosa v. Garland*, 114 F.4th 1, 5 (1st Cir. 2024).

[4] The Government submitted an audio recording of the master calendar hearing. *See* ECF No. 5. The Court has listened to the hearing in its entirety and references relevant portions throughout this Order.

[5] The Government submitted an audio recording of the removal hearing. *See* ECF No. 5. The Court has listened to the hearing in its entirety and references relevant portions throughout this Order.

At the hearing, the IJ observed that Mr. Ramirez had not filed an application for relief since his last hearing. *Id.* at 00:17-00:22. Mr. Ramirez's attorney notified the IJ that she had just been retained by Mr. Ramirez the day prior, and she asked for a continuance so that she could have more time to review her client's file. *Id.* at 00:25-00:32. Mr. Ramirez's attorney further noted that she was unaware of the IJ's instruction concerning the application for relief because there was no record of it in her client's file, and she assured the IJ that she would file an application for Mr. Ramirez to adjust status given that his SIJ status made him eligible to pursue this form of relief. *Id.* at 01:00-01:30.

The IJ denied the request for a continuance, stating that it was Mr. Ramirez's responsibility to inform his attorney of the IJ's instruction. *Id.* at 01:31-01:41. The IJ thereafter ordered Mr. Ramirez removed to Guatemala. *Id.* at 07:27-07:37; *see also* ECF No. 4-1 at 1 (displaying the IJ's order of removal in Mr. Ramirez's case). Mr. Ramirez has since filed an appeal of the removal order with the Board of Immigration Appeals ("BIA"), which remains pending at this time. ECF No. 1 at 6.

About a month later, Mr. Ramirez appeared again before the Chelmsford Immigration Court for a bond hearing. *See* Bond Hearing, Chelmsford Immigr. Ct. (recorded Apr. 27, 2026) (hereinafter, "Bond Hearing").[6] Before the hearing, the attorney representing the Department of Homeland Security ("DHS") submitted the various police reports and Chelsea District Court dockets relating to Mr. Ramirez's

---

[6] The Government submitted an audio recording of the bond hearing. *See* ECF No. 5. The Court has listened to the hearing in its entirety and references relevant portions throughout this Order.

three prior arrests.  *See* ECF No. 5-2.  For his part, Mr. Ramirez's attorney submitted around 100 pages of evidence in support of his request for release on bond.  *See* ECF No. 8-1 at 14.

At the hearing, the IJ determined that Mr. Ramirez posed a danger to the community by clear and convincing evidence, and she stated as follows:

> **IJ:** Alright, the court has reviewed the evidence in the record in its entirety and considered the arguments of parties.  The court is denying bond.  The court does find that [Mr. Ramirez] has been shown to be a danger to the community by clear and convincing evidence.  The facts in this case, the court finds that the criminal history in this case is overwhelming and extremely serious.  For the reasons stated by the, articulated by the Government, the court agrees with DHS's arguments and summation of [Mr. Ramirez's] criminal history.  The court further notes that there is internal corroboration within the police reports, including physical observations by the police officers, such as bruising on the alleged victims' faces.  The court recognizes there may not be convictions.   Nevertheless, the court is entitled to consider the underlying evidence, regardless of whether [Mr. Ramirez] has been held criminally responsible beyond a reasonable doubt, which is not the standard here.  So, the court does particularly note the egregious nature of the allegations of physical abuse against a child—a young child in fact—with visible injury to the officers, which is a form of corroboration.  And then of particular concern are the firearms and shooting allegations, which of course pose an incredibly serious danger to the community.  Given the extremely high danger here and the nature of the alleged underlying offenses and activities and conduct, the court does find that no conditions or alternatives to detention would suffice to ameliorate the danger.  In the alternative, the court is finding that [Mr. Ramirez] is also a flight risk that no amount of bond can ameliorate, particularly given that [Mr. Ramirez] has already been given a removal order.  The court does not believe that he is likely to succeed on any appeal which is pending.   And the court also believes that [Mr. Ramirez's] extreme criminal history speaks to, is relevant to flight risk here, given the extremely serious nature of the charges.  [Mr. Ramirez] is not apparently a person who can, or is willing to, abide by the law. The court therefore has little confidence that [Mr. Ramirez] is going to abide by immigration procedures or proceedings and appear for those proceedings, and that he is not reliable, given his criminal history on that point.  The court believes that no conditions or alternatives to

6

detention would suffice to ameliorate flight risk in this case, again for all the very serious reasons that the court has enumerated.  Therefore, bond is denied.

Bond Hearing, at 20:05-23:10; *see also* ECF No. 4-3 at 1 (displaying the IJ's bond determination).

Mr. Ramirez filed the present habeas petition a few weeks later.  ECF No. 1. He argues that the IJ violated his due process rights under the Fifth Amendment by failing to provide him with a proper bond hearing.  *Id.* at 8.  The Government objects to Mr. Ramirez's petition, asserting, among other things, that his bond hearing was "constitutionally sufficient."  ECF No. 4 at 5.

## II.    DISCUSSION

### A.    Jurisdiction

At the outset, the Government presents a familiar argument, asserting that 8 U.S.C. § 1226(e) deprives this Court of jurisdiction to consider Mr. Ramirez's petition. ECF No. 4 at 4.  This provision of the INA provides that "[t]he [Secretary of Homeland Security's][7] discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the [Secretary] under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole."  8 U.S.C. § 1226(e).

---

[7] The language of the statute refers to the "Attorney General's discretionary judgment."  8 U.S.C. § 1226(e).  However, following the lead of the Supreme Court, the Court has replaced the Attorney General with the Secretary of Homeland Security because "Congress has empowered the Secretary to enforce the [INA]." *Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019) (citing 8 U.S.C. § 1101 et seq.); *see also id.* at 401 (replacing "Attorney General" with "Secretary" for the purposes of Section 1226(e)).

As the Court has stated many times before, Section 1226(e) does not deprive the Court of jurisdiction over "constitutional claims or questions of law." *See, e.g.*, *Garcia v. Hyde*, 817 F. Supp. 3d 112, 124 (D.R.I. 2025); *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *8 (D.R.I. Jan. 21, 2026); *Picado v. Hyde*, No. 26-cv-065-JJM-PAS, 2026 WL 352691, at *4-5 (D.R.I. Feb. 9, 2026); *España v. Nessinger*, No. 26-cv-014-JJM-PAS, --- F. Supp. 3d ----, 2026 WL 821788, at *4-6 (D.R.I. Mar. 25, 2026); *Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 1329522, at *2 n.4 (D.R.I. May 13, 2026); *Soares De Souza v. Nessinger*, No. 26-cv-221-JJM-PAS, 2026 WL 1593406, at *3 (D.R.I. June 4, 2026); *Luis Luis v. Nessinger*, 2026 WL 1743600, at *4 (D.R.I. June 17, 2026).

Indeed, "where a 'bond denial is challenged as legally erroneous or unconstitutional,' a district court sitting in habeas retains jurisdiction over that challenge." *España*, 2026 WL 821788, at *5 (quoting *Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025)). That is the sort of challenge that Mr. Ramirez brings here, arguing that the IJ's decision to deny him bond violated his due process rights because she failed to provide him with a proper bond hearing. ECF No. 1 at 8.

Presented with this due process challenge, the Court's task, then, is "simply to ascertain whether the immigration court's discretion was exercised in a manner consistent with due process." *Miti v. Moniz*, No. 26-11327-BEM, --- F. Supp. 3d ----, 2026 WL 884639, at *4 (D. Mass. Mar. 31, 2026). As such, Section 1226(e) does not deprive the Court of jurisdiction over Mr. Ramirez's claim.

### B.    The Merits[8]

Turning to the merits of the case, the question the Court must answer is whether the evidence that the Government presented to the IJ was sufficient to deny Mr. Ramirez's request for release on bond.  The parties do not dispute that Mr. Ramirez is being held in ICE custody pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)").  *See* ECF No. 1 at 8; ECF No. 4 at 3.  This provision of the INA permits DHS "to detain certain [noncitizens] already in the country pending the outcome of removal proceedings."  *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8 U.S.C. § 1226(a)).  Though an IJ has ordered him removed to Guatemala, *see* ECF No. 4-1 at 1, this decision has not yet become a final order of removal because the BIA has yet to rule on Mr. Ramirez's appeal of that decision.  *See* 8 C.F.R. § 1241.1(a) (explaining that "[a]n order of removal made by the [IJ] . . . shall become final . . . [u]pon dismissal of an appeal by the [BIA]").

The First Circuit has recognized that the Fifth Amendment's Due Process Clause entitles noncitizens subject to detention under Section 1226(a) with the right to seek review of their custody decision at a bond hearing before an IJ.  *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).  At this hearing, the Government bears the burden of proving either by: (1) clear and convincing evidence that the noncitizen poses a danger to the community; or (2) a preponderance of the evidence that the noncitizen poses a flight risk.  *Id.*

---

[8] The Government also raises exhaustion arguments, *see* ECF No. 4 at 6-7, that the Court need not reach because it sides with the Government on the merits.

Where a noncitizen challenges an IJ's bond determination, "to obtain habeas relief, the noncitizen must show that the IJ 'failed to place the burden of proof on the Government' to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence." *Picado*, 2026 WL 352691, at *6 (quoting *Mayancela Mayancela*, 2025 WL 3215638, at *5). This showing can be made in one of two ways: "(1) demonstrating that the IJ erred because the evidence itself could not, as a matter of law, have supported the IJ's decision to deny bond; or (2) pointing to the IJ's opinion itself and showing that the IJ failed to apply the correct standard to the facts." *Id.* (citing *Garcia*, 817 F. Supp. 3d at 126).

Mr. Ramirez appears to proceed on the first track, challenging the IJ's determination that he poses a danger to the community. *See* ECF No. 1 at 8-11. To determine whether a noncitizen poses a danger to the community, the BIA instructs IJs to weigh nine factors. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), *abrogated on other grounds*, *Hernandez-Lara*, 10 F.4th at 41.[9] The IJ "may" consider "any or all of the following": (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, particularly those which could confer immigration benefits on the noncitizen; (4) the noncitizen's employment history; (5)

---

[9] "The First Circuit has since abrogated *Matter of Guerra* to the extent that noncitizen detainees no longer bear the burden of proving that they merit release at their bond hearings; now, the burden has shifted to the Government to prove that release is not merited." *Garcia*, 817 F. Supp. 3d at 127 (citing *Hernandez-Lara*, 10 F.4th at 41). However, *Matter of Guerra* is still treated as helpful "guidance" as to how IJs are to evaluate dangerousness and flight risk in the context of bond determinations. *See Miti*, 2026 WL 884639, at *6 n.15.

the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any previous attempts to escape from authorities or avoid prosecution; and (9) the noncitizen's manner of entry to the United States. *See id.*

Here, the IJ found Mr. Ramirez to pose a danger to the community by clear and convincing evidence based on what she referred to as Mr. Ramirez's "overwhelming and extremely serious" criminal history. Bond Hearing, at 20:12-20:25. As support for this finding, the IJ gave considerable weight to the police reports detailing Mr. Ramirez's prior arrests. *Id.* at 20:40-21:10.

Mr. Ramirez brings up two issues with the IJ's determination. First, he argues that it was legal error for the IJ to make her dangerousness determination based on purportedly "uncorroborated police reports." ECF No. 1 at 9. Second, he argues that the IJ erred by failing to consider positive equities weighing in favor of his request for release on bond, such as evidence of "community ties" and "productive efforts undertaken in the wake of his arrest" to "change his life for the better." *Id.* at 9, 10. The Court finds no legal error in either approach.

The Court begins with Mr. Ramirez's first argument. As this Court has emphasized in recent months, "[i]t is permissible . . . for an IJ to rely on a police report—even if it does not result in a criminal conviction—so long as the allegations contained therein are supported by corroborating evidence." *Higiro*, 2026 WL 1329522, at *6 (internal citations omitted); *see also Soares De Souza*, 2026 WL

11

1593406, at *6 ("[T]his Court has now held on several occasions that 'an uncorroborated police report cannot, by itself, establish dangerousness as a matter of law.'"); *Picado*, 2026 WL 352691, at *7 ("Without more, an uncorroborated police report is simply not clear and convincing evidence sufficient for a finding of dangerousness."); *Rosa Pineda v. Nessinger*, No. 25-cv-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025) ("[A]n uncorroborated police report cannot, alone, be 'clear and convincing evidence sufficient for a finding of dangerousness.'").

These decisions come in the wake of a recent First Circuit holding: When an IJ exercises discretion in the weighing of positive or negative factors in an immigration proceeding, "the [IJ] may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report." *Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (quoting *In re Arreguin de Rodriguez*, 21 I&N Dec. 38, 42 (BIA 1995)); *see also Maurice v. Bondi*, 154 F.4th 15, 22 (1st Cir. 2025) (reiterating *Rosa*'s holding and recognizing that the BIA erred by failing to consider whether police reports in the record were corroborated before assigning those reports substantial weight).[10]

---

[10] To be sure, both *Rosa* and *Maurice* addressed the IJs' denials of applications for adjustment of status based on the IJs assigning great weight to the applicants' arrest reports as a factor weighing against granting relief. *See Rosa*, 114 F.4th at 16; *Maurice*, 154 F.4th at 22. These decisions did not involve bond determinations. However, considering that an IJ is also given broad discretion in deciding how much weight to assign certain factors in a bond determination proceeding, *see Matter of Guerra*, 24 I&N Dec. at 40; *see also* 8 C.F.R. § 1003.19(d), the Court finds that the IJ's discretion in bond determinations is also cabined by the First Circuit's decisions in *Rosa* and *Maurice*.

That said, the IJ in Mr. Ramirez's case was not dealing with uncorroborated police reports.  With respect to Mr. Ramirez's assault and battery charges, the IJ observed that "there is internal corroboration within the police reports, including physical observations by the police officers, such as bruising on the alleged victims' faces."  Bond Hearing, at 20:39-20:52; *see also id.* at 21:25-21:30 ("So, the court does particularly note the egregious nature of the allegations of physical abuse against a child—a young child in fact—with visible injury to the officers, which is a form of corroboration.").  This at least constitutes "internal corroboration" within the report, that is, "multiple sources of inculpatory information . . . contained within the four corners of the report." *Macedo v. Wesling*, No. 1:26-cv-36-JL-TSM, 2026 WL 1413156, at *3 (D.N.H. May 20, 2026).  This differs from "external corroboration," which is "corroboration of a police report from sources external to and independent of the report." *Id.* at 4.

There appears to be an open question as to whether internal corroboration is sufficient to render a police report reliable.  Indeed, in *Rosa*, the First Circuit specifically left unanswered the question of whether "corroboration could come from within the police report itself."  114 F.4th at 22; *see also id.* ("[T]he [BIA's] *Arreguin* decision gives little explanation of what qualifies as sufficient 'corroboration.'").

At least one other court within this circuit has found that an IJ permissibly relied on a police report's internal corroboration when making her bond determination. *See Macedo*, 2026 WL 1413156, at *4 ("Without a definitive statement from the Court of Appeals that corroboration for police reports must come from

13

external sources . . . and because the police report in this case contains multiple types and sources of evidence which serve to corroborate the allegations in the report, this court finds that the IJ permissibly relied on the police report.").

This Court is inclined to agree with the *Macedo* court. As relevant here, at the time of Mr. Ramirez's March 7, 2024 arrest for assault and battery, police officers observed bruising on the faces of his ex-girlfriend and her ten-year-old brother. ECF No. 5-2 at 23. These observations were not made in a vacuum. Rather, the observations were made following the ex-girlfriend's own statement to the police officers that Mr. Ramirez had "slapped her 2-3 times with an open hand across [the] fac[e]," as well as her younger brother's statement that Mr. Ramirez had also struck him "with an open hand across the face." *Id.*

Taken together then, there is sufficient corroboration contained within the police reports. *See Soares De Souza*, 2026 WL 1593406, at *7 ("Corroborating evidence, as the BIA has come to define it post-*Rosa*, can include statements made by the alleged victim of a crime that the noncitizen is accused of having committed, as well as statements made by the noncitizen themselves."); *Matter of D. Rodriguez*, 28 I&N Dec. 815, 824 (BIA 2024) (explaining that a police report was sufficiently corroborated because it collected "statements that the victim made to her therapist, her mother, and a forensic interviewer, as well as statements allegedly made by the respondent himself to the victim's mother"). As such, the IJ in Mr. Ramirez's case did not err in relying on this evidence in making her bond determination.

14

As to his second argument, Mr. Ramirez claims that his bond hearing contravened due process because the IJ in his case "ignored [his] evidence of community ties and improvement." ECF No. 1 at 9. As an initial matter, while it is true that "IJs generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions," they "'need not discuss ad nauseam every piece of evidence." *Mayancela Mayancela*, 2025 WL 3215638, at *6 (quoting *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023)). Nor do IJs need to "spell out every last detail of [their] reasoning where the logical underpinnings are clear from the record." *López-Gómez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025) (quoting *Rivera-Medrano v. Garland*, 47 F.4th 29, 39 (1st Cir. 2022)).

Here, the logical underpinnings of the IJ's reasoning are clear from the audio recording of the bond hearing. Prior to issuing her bond determination, the IJ stated that she "ha[d] reviewed the evidence in the record in its entirety and considered the arguments of parties." Bond Hearing, at 20:05-20:12. This necessarily included Mr. Ramirez's evidence of "community ties" and "productive efforts undertaken in the wake of his arrest" to "change his life for the better," which Mr. Ramirez had submitted prior to the hearing. ECF No. 1 at 9, 10; *see also* ECF No. 8-1 (displaying evidence presented to the IJ by Mr. Ramirez in support of bond). Thus, it does not appear that the IJ simply "ignored" the evidence weighing in favor of granting bond. Rather, the IJ seemingly chose to place more weight on the evidence of criminal activity contained in the record.

Even if the Court were to disagree with how the IJ weighed the evidence before her, this is of no consequence because "[t]he Court ... 'has no authority to encroach upon an IJ's discretionary weighing of the evidence.'" *Garcia*, 817 F. Supp. 3d at 126 (quoting *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020)); *see also Arellano v. Sessions*, No. 6:18-cv-06625-MAT, 2019 WL 3387210, at \*7 (W.D.N.Y. July 26, 2019)). As the First Circuit instructs, the Court must be "mindful of [its] obligation to afford . . . a degree of deference to the [factfinder's] determinations." *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990). Absent any legal or constitutional error in the IJ's analysis, the Court must let the IJ's decision stand.

There were no such errors here. Based on the totality of the evidence before the IJ, a reasonable jurist could have concluded by clear and convincing evidence that Mr. Ramirez posed a danger to the community. *See Soares De Souza*, 2026 WL 1593406, at \*8 (applying same standard and reaching same conclusion); *Acero v. FCI Berlin, Acting Warden*, No. 26-cv-159-LM-AJ, --- F. Supp. 3d ----, 2026 WL 821896, at \*4 (D.N.H. Mar. 25, 2026) (same).[11]

## III.   CONCLUSION

Accordingly, finding there to be no due process violation, the Court DENIES Mr. Ramirez's petition. ECF No. 1.

---

[11] Mr. Ramirez also challenges the IJ's determination that he poses a flight risk. *See* ECF No. 1 at 11-12. It is unclear why the IJ even made such a finding, given that IJs are instructed by the BIA to address flight risk "[o]nly if [a noncitizen] demonstrates that he does not pose a danger to the community[.]" *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) (citing *Matter of Drysdale*, 20 I&N Dec. 815, 817-18 (BIA 1994). In any event, the Court need not address this argument because it finds that the IJ did not err in finding Mr. Ramirez to pose a danger.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


June 25, 2026

17